## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2017, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ann C. Coriden
Dominic W. Glover
Coriden Glover, LLC
Columbus, Indiana

ATTORNEY FOR APPELLEE

C. Richard Marshall
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Randall Strietelmeier, <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Tammie Nichols Strietelmeier, <br><br> *Appellee-Petitioner.* | May 11, 2017 <br><br> Court of Appeals Case No. 03A01-1608-DR-1831 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Judge <br><br> Trial Court Cause No. 03D01-1504-DR-2139 |

**Najam, Judge.**

## Statement of the Case

[1] John Randall Strietelmeier ("Randy") appeals the trial court's order finding him in contempt of court and failing to impose sanctions for Tammie Nichols

Strietelmeier's ("Tammie") contempt of court. On appeal he raises five issues, which we consolidate and restate as the following two issues:

1. Whether the trial court clearly erred when it held Randy in contempt of court.

2. Whether the trial court clearly erred when it found Tammie in contempt but did not impose a sanction for that contempt.

We affirm.

## Facts and Procedural History

Randy and Tammie married on March 8, 2003. During the marriage, the couple had two children. On April 27, 2015, Tammie petitioned for the dissolution of her marriage to Randy. By agreement of the parties, the dissolution and property division were bifurcated from custody issues. On January 13, 2016, following a hearing, the trial court issued an order dissolving the parties' marriage and distributing the marital estate. Tammie had submitted to the court her Exhibit B, which was a list of personal property Tammie wished the court to award to her. In its order, the trial court divided the marital estate by awarding forty-five percent to Randy and fifty-five percent to Tammie. The trial court awarded Randy the marital residence subject to a property equalization payment and gave Tammie thirty days to vacate the marital residence.

The trial court also ordered in part:

9. The Court finds that Petitioner/Wife shall receive all the personal property listed on her exhibit, with the exception that Respondent/Husband shall receive ½ of the children's ornaments and ½ of grandmother's gifted China. A copy of the personal property list is attached hereto as Exhibit "B".

10. The parties shall file a joint state and federal income tax return for tax year 2015 and, after the costs of tax return preparation[,] shall equally divide the anticipated refund.

11. The parties have two savings accounts at Centra Credit Union that have been maintained for the benefit of the two minor children. . . . These accounts shall be maintained as minor accounts. Both parents shall be listed as co-custodians on these accounts. Both accounts shall be set up with Centra such that any withdraw from either account requires the signature of both parents before any withdraw may be made. Both parents are free to contribute to these accounts on an ongoing basis as he/she sees fit.

Tr. Vol. II at 24-25.

[5] On March 25, 2016, Randy filed a contempt petition in which he alleged that Tammie violated the trial court's January 2016 order by removing his half of the Christmas ornaments and removing additional personal property that was not specifically identified in Exhibit B of the January 2016 order. Randy's petition included a list of forty items for which he sought reimbursement and his valuation of the various items, which totaled $12,773. Along with items such as silverware and gaming devices, the list included more minor items such

as an umbrella, a broom, a dish strainer, and cleaning supplies. It also included costs other than those for personal belongings, such as the costs of carpet cleaning, electric bills, plumbing repairs and burned out light bulbs.

[6] On March 30, 2016, Tammie filed her own contempt petition in which she alleged that Randy had failed to comply with the trial court's January 2016 order when he transferred the children's savings accounts out of her name and failed to distribute one-half of the couple's 2015 income tax refund to her.

[7] On April 15, 2016, and June 30, 2016, the trial court held a hearing on all outstanding issues, including the parties' contempt petitions. On July 11, 2016, the trial court issued an order in which it found in part:

> 8. Father is in contempt for transferring the children's Centra Credit Union Accounts contrary to what the Court's previous order was.
>
> 9. Mother is in contempt for removing numerous items from the home that were outside of the January 13, 2016 Order of the Court.
>
> 10. The Court finds that the parties' contempt[s are] a wash and orders no further sanctions.

Appellant's App. Vol. II at 39. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[8] Randy challenges the trial court's rulings on his and Tammy's contempt petitions. Typically, we review such rulings for an abuse of discretion. *See Bartlemay v. Witt*, 892 N.E.2d 219, 227 (Ind. Ct. App. 2008); *see also Aaron v. Scott*, 851 N.E.2d 309, 314 (Ind. Ct. App. 2006) (emphasis added) ("Punishment or *refusal to punish* for contempt is generally a matter within the trial court's discretion."), *trans. denied*. Here, the trial court entered findings and conclusions in its July 11 order following an evidentiary hearing. Our standard of review in that situation is well-settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted).

## Issue One: Randy's Contempt of Court

The trial court held that Randy was "in contempt for transferring the children's Centra Credit Union Accounts contrary to what the Court's previous [January 13, 2016] order was." Appellant's App. Vol. II? at 12. Randy does not contest that he transferred the children's savings accounts contrary to the court's prior order. Rather, he contends that he cannot be held in contempt because Tammy "was not injured or damaged by his [contemptuous] conduct." Appellant's Br. at 17. Randy's argument is not well-taken. Randy's contemptuous action of removing Tammy as a co-custodian of the children's accounts injured her because her consent regarding transactions relating to the accounts was no longer required, allowing Randy alone to control the accounts.

Randy also contends that the trial court erred in failing to give him the opportunity to "purge himself of his contempt." *Id.* at 11. Indiana Code Section 34-47-3-5(c) (2016) provides that, "on proper showing," a trial court shall give a contempt defendant "a reasonable and just opportunity to be purged of the contempt." However, the record does not disclose that Randy made any showing to the trial court that he should be given the opportunity to purge himself of contempt, and Randy does not assert that he did so. Therefore, the trial court was not required by statute to allow him the opportunity to purge himself of the contempt. *Reynolds v. Reynolds*, 64 N.E.3d 829, 836 (Ind. 2016).

Although the trial court specifically stated that it was ordering no sanctions on the parties' contempt petitions, Randy also asserts that the trial court's refusal to sanction Tammy for her contempt somehow served as an "indirect" sanction or

punishment to him for his own contempt. Appellant's Br. at 17, 19; Reply Br. at 6-7. However, he cites no authority or cogent argument for this proposition and it is therefore waived. Ind. Appellate Rule 46(A)(8). Moreover, as discussed below, we hold that the trial court did not err when it refused to impose sanctions for Tammie's contempt of court.

[12] The trial court did not clearly err when it held Randy in contempt of court, and its failure to sanction Tammie for contempt was not an "indirect sanction" against Randy for his contempt.

### Issue Two: Refusal to Sanction Tammy for Contempt of Court

[13] Randy contends that the trial court erred when it failed to sanction Tammie for her contempt of the court's order on property division.[1] Specifically, he maintains that the trial court should have ordered her to either return all the items listed in his petition for a contempt citation and his supplemental list or else ordered her to pay him for the value of all such items, either through a damages award or through a recalculation of the monetary division of the marital assets.

[14] The trial court did find Tammie in contempt "for removing numerous items from the home that were outside of the January 13, 2016 Order of the Court."

---

[1] Randy also maintains that the trial court erred in "handling the two contempt" actions "in concert." Appellant's Br. at 17. His claim seems to be that the trial court was required to issue two separate orders, one for each parties' contempt petition, rather than including the rulings on both of the contempt petitions in the July 11 order. However, again, he cites no authority or cogent argument for this proposition and it is therefore waived. App. R. 46(A)(8).

Appellant's App. Vol. II at 39. However, it was within the court's discretion to punish or refuse to punish Tammie for that contempt. *Aaron*, 851 N.E.2d at 314. The court had before it Randy's lists of items and their alleged values[2] and it heard testimony from Tammie explaining that she did not take all the items on the lists and why she did take other items on the lists.[3] It was up to the trial court to weigh that evidence and determine the credibility of the witnesses. Having done so, the trial court concluded that "the parties' contempt [was] a wash" and it would therefore impose "no further sanctions." Appellant's App. Vol. II at 39. The trial court did not clearly err in so holding[4] and Randy's arguments to the contrary are simply requests that we reweigh the evidence, which we will not do. *Bartlemay*, 892 N.E.2d at 227; *Kappel*, 979 N.E.2d at 651-52.

[15]   Affirmed.

Bailey, J., and May, J., concur.

---

[2] Randy has not directed us to any evidence in the record supporting the values alleged in his lists of property, many of which are not obvious—such as $180 for "cleaning supplies" and $360 for "3 dead goats." Appellant's App. Vol. II at 32-33.

[3] For example, Tammie testified that she took some items on Randy's list because they were gifts to her from Randy or others. Tr. Vol. II at 176-78, 180-181.

[4] Because we uphold the trial court's decision not to impose sanctions on Tammie for her contempt, we do not address the parties' arguments about whether the trial court could order that Tammie's sanctions be handled through the distribution of the marital estate.